IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | **8:20CR120** |
| vs. | |
| TANNER J. LEICHLEITER, | **ORDER** |
| Defendant. | |

This matter is before the Court on Defendant Tanner Leichleiter's Motion to Sever Counts (Filing No. 44).  An evidentiary hearing was held regarding this matter on September 16, 2020.  A transcript has been filed and the motion is ready for disposition.  For the reasons explained below, the motion will be denied.

**FACTS**

On June 17, 2020, Defendant was indicted on a two-count indictment with kidnapping in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2, and as being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3) and 924(a)(2).  (Filing No. 27.)

A criminal complaint was filed against Defendant on April 21, 2020.  (Filing No. 1.)  FBI Special Agent Anthony Peterson ("Agent Peterson") completed the affidavit in support of the criminal complaint and the arrest warrant.  (Filing No. 1.)  Agent Peterson also testified at the evidentiary hearing.[1]  Agent Peterson has been with the FBI for a little over ten years and is assigned to the FBI Omaha Division, Violent Crimes Against Children Task Force, where he is responsible for investigating violations of various criminal statutes.  (Filing No. 1; TR. 4-5.)  Agent Peterson has received training in kidnapping investigations from the FBI and has knowledge about the means and methods of kidnapping investigations.  (Filing No. 1.)  Prior to joining the FBI, Agent Peterson served as a police officer with the Omaha Police Department. (Filing No. 1.)

---

[1] Agent Peterson adopted the facts set forth in the criminal complaint affidavit as part of his hearing testimony.  (TR. 8.)

According to Agent Peterson's affidavit and hearing testimony, on April 19, 2020, at approximately 12:00 p.m., Karen De La Garza ("Karen") returned to Tekamah, Nebraska from Grand Island, Nebraska where she had been visiting family.  (Filing No. 1.)  While she was in Grand Island, her mother, Nora Gilda Guevara Tirana ("Tirana"), watched Karen's two children, ages 7 and 4. (Filing No. 1.)  There was no legal or custody agreement which gave Tirana custody of the children.  (Filing No. 1.)  Agent Peterson's affidavit states that upon Karen's return to Tirana's residence in Tekamah, she was involved in a verbal altercation with Tirana and Defendant.  (Filing No. 1.) Defendant is Karen's stepfather.  During the argument, Tirana destroyed Karen's cell phone, smart watch, and computer with a hammer.  (Filing No. 1.)  Agent Peterson's affidavit states Defendant physically assaulted Karen and the children, and that Tirana forced Karen into a back bedroom of the residence.  (Filing No. 1.)  According to the affidavit, Tirana kept Karen captive in the back room by threatening her with a hammer.  (Filing No. 1.) Tirana told Karen that Defendant was taking the children and that Karen would have to kill her to get out of the room or to prevent Defendant from taking the children.  (Filing No. 1.)  Karen could hear the children in the residence until approximately 9:30 p.m. on April 19, 2020.  (Filing No. 1.)

The affidavit states that at approximately 5:00 a.m. on April 20, 2020, Karen was able to free herself from the back room after Tirana fell asleep.  (Filing No. 1.)  Karen could not find Defendant or the children, so she went to a gas station and called police.  (Filing No. 1.)  Agent Peterson's affidavit states that Karen did not give Defendant permission to take the children and that there was no legal or verbal agreement allowing Defendant to have custody of the children. (Filing No. 1.)  Officers then issued an Amber Alert.  (TR 4.)

At about 10:58 a.m. on April 20, 2020, law enforcement in Sedgwick County, Kansas located Defendant's vehicle in Haysville, Kansas. (TR. 4.)  Law enforcement darted Defendant's vehicle with a canister containing a tracking beacon.  (TR. 10.)  After his vehicle was hit with the canister, Defendant pulled over.  (TR. 10.)  Law enforcement instructed Defendant to exit his vehicle at gunpoint.  (TR. 10.)  Defendant exited his vehicle and was placed under arrest.[2]  (TR. 4, 10.)

---

[2] Agent Peterson was not present when Defendant was arrested.  (TR. 9.)  The information provided by Agent Peterson was gained from his review of police recordings and police reports.  (TR. 9.)

The children and a dog were found in the back of Defendant's vehicle.   (TR. 4-5.) The children were not wearing shoes and were not in car seats.  (TR. 5-6.)  There were no car seats in the vehicle.  (TR. 5.) Agent Peterson testified that it did not appear the children were properly prepared for a trip.[3]  (TR. 6.)  Agent Peterson testified that narcotics and several firearms were found in the vehicle.  (TR. 5, 7.)  Loaded firearms were in the front driver's seat area.  (TR. 7.) There were also bullets throughout the vehicle and firearms in the back of the vehicle.  (TR. 7.) Agent Peterson testified that Defendant could have easily grabbed the firearms while driving.  (TR. 7.)  Defendant did not have his cell phone with him at the time of his arrest.  (TR. 6.)  Defendant left his phone in Tekamah, Nebraska. (TR. 6.)

Agent Peterson testified that Defendant made conflicting statements regarding the children as he was being arrested.  (TR. 6.)  Agent Peterson testified that Defendant stated that the children's grandmother told him to take them.  (TR. 6.)  According to Agent Peterson, Defendant also said he took the children because their mother kept running away with them.  (TR. 6.)  According to Agent Peterson, Karen also relayed to officers that Defendant may have been motivated to take the children because he wanted to teach them to be survivalists and prepare for COVID-19.  (TR. 8.)

Agent Peterson testified that witnesses familiar with Defendant's drug use indicated during the investigation that Defendant's drug use had increased and that his behavior had become more erratic.  (TR. 7-8.) Agent Peterson said that the witnesses reported Defendant's drug use may have driven Defendant's decision-making that led to the incident.  (TR. 7-8.)

## DISCUSSION

Rule 8(a) of the Federal Rules of Criminal Procedure permits the government to charge multiple counts in a single indictment if "the offenses are of the same or similar character, based on the same act or transaction, or are parts of a common scheme or plan." *United States v. Steele,* *550 F.3d 693, 702 (8th Cir. 2008).*  Rule 8 "is broadly construed in favor of joinder to promote the efficient administration of justice." *United States v. Taken Alive,* 513 F.3d 899, 902 (8th Cir.

---

[3] Agent Peterson acknowledged on cross-examination that he had not reviewed or examined all the contents of Defendant's vehicle and, thus, could not testify as to what items of children's clothing, if any, were in the vehicle.  (TR. 11.)

2008).

Under Rule 8, offenses are considered "of the same or similar character" if they "refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Lindsey*, 782 F.2d 116, 117 (8th Cir. 1986) (quotation omitted). The time factor is determined on a case-by-case basis and "there is no per se rule on when the time period between similar offenses is so great that they may not be joined." *United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984). Evidence overlaps for purposes of Rule 8 when evidence surrounding one offense would be probative and admissible at the defendant's separate trial for the other offense under Federal Rule of Evidence 404(b). *Id.* at 630.

Whether offenses are based on the same act or transaction or part of a common scheme or plan should be interpreted "flexibly," requiring that the offenses have a "logical relationship" to one another. *See United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005); *United States v. Park*, 531 F.2d 754, 761 (5th Cir. 1976). Offenses can be deemed to arise out of the same transaction or be part of a common plan or scheme when they are factually intertwined or are temporally related. *See United States v. Johnson*, 462 F.3d 815, 822 (8th Cir. 2006) (finding charges to be part of a common plan or scheme where they were connected temporally and logically); *United States v. Pietras*, 501 F.2d 182 (8th Cir. 1974) (finding charge of possession of an unregistered firearm was based on the same transaction and properly joined with a count of armed bank robbery because possession of the firearm derived from its presence in the van in which defendant attempted to escape); *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007) (finding counts in the indictment based on the same transaction because the counts arose from the same shooting incident that occurred when officers attempted to serve a warrant). An important consideration in determining whether events are based on the same transaction or part of a common plan or scheme is whether evidence supporting the separate counts overlaps so that the same evidence would be admissible at separate trials. *United States v. Little Dog*, 398 F.3d 1032 (8th Cir. 2005). *See also United States v. King*, 567 F.2d 785, 788 (8th Cir. 1977) (finding no misjoinder where the "transactions and events occurred over a short period of time, were similarly carried out, and the evidence necessarily overlapped").

Once it is determined that offenses are properly joined under Rule 8, Rule 14 of the Federal

4

Rules of Criminal Procedure specifies that the district court may nevertheless order separate trials if a joint trial would "prejudice a defendant or the government." Fed. R. Crim. P. 14. However, "[o]nly in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." *United States v. Al-Esawi*, 560 F.3d 888, 891 (8th Cir. 2009).

Having thoroughly reviewed the matter, the Court finds joinder proper under Rule 8. Defendant has been charged with kidnapping and as being an unlawful user of a controlled substance in possession of a firearm.  The logical relationship between the events underlying each of the counts and the temporal proximity of the events show that the charges are based on the same act or transaction.  Defendant allegedly kidnapped the children sometime after 9:30 p.m. on April 19, 2020.  After escaping from Tirana's residence in the early morning hours of April 20, 2020, Karen reported Defendant took her children and law enforcement issued an Amber Alert.  Officers located Defendant's vehicle in Kansas at approximately 11:00 a.m. on April 20, 2020.  Narcotics and firearms were found in Defendant's vehicle as officers were recovering the children from Defendant's vehicle and investigating the alleged kidnapping. Witnesses interviewed in connection with the kidnapping reported that Defendant's drug use had increased, and his behavior had become more erratic.  Both charges against Defendant are based on the same series of events which took place over a short period of time.

The evidentiary overlap between the offenses further demonstrates the interrelatedness of the charges and why joinder is proper.  Evidence regarding the firearms and drugs would be admissible in the kidnapping case even if there were separate trials.  At the time Defendant was found with the children in his vehicle, law enforcement discovered that Defendant's vehicle contained narcotics and multiple firearms.  The children were not wearing shoes, were not in seat belts, and did not appear to be prepared for a trip. Defendant's possession of firearms and the appearance of the children at the time of the traffic stop is relevant to allegations that Defendant took the children without permission.  Similarly, statements Defendant made at the time of the traffic stop regarding why he had the children are relevant to the kidnapping charge.  Moreover, witnesses' testimony regarding Defendant's drug use and erratic behavior will be admissible and is potentially relevant to the motive for the purported kidnapping.  In addition, the facts surrounding the kidnapping would be admissible in the trial on the firearms charge.  Therefore,

5

given the relatedness and temporal proximity of events, as well as evidentiary overlap, the counts are properly joined.

Defendant also argues that even if the counts are properly joined under Rule 8, the counts should be severed under Rule 14 because he will be prejudiced by a joint trial due to the allegations of drug use and possession of firearms. The Court finds this argument unpersuasive. The Eighth Circuit Court of Appeals has made clear that "[n]o prejudice results from the refusal to sever when evidence of one charge would be admissible in a separate trial on the other." *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010). Under Federal Rule of Evidence 404(b), facts related to the charge of unlawful possession of firearms will likely be probative and admissible in a separate trial on the charge of kidnapping. *See United States v. Boyd*, 180 F.3d 967, 983 (8th Cir. 1999) ("As the evidence would have been admissible in a separate trial for another crime under Rule 404(b), a joint trial does not result in additional prejudice"). Likewise, facts surrounding the kidnapping will most likely be admissible in a trial on the firearms charge. Therefore, Defendant will not be prejudiced by a joint trial and the counts will not be severed.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Sever Counts (Filing No. 44) is denied.

Dated this 30th day of October, 2020.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

6