IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

TANNER J. LEICHLEITER,

Defendant.

**8:20-CR-120**

**TENTATIVE FINDINGS REGARDING
DEFENDANT'S PRE-SENTENCING
MOTIONS AND OBJECTIONS**

This matter is before the Court on defendant Tanner Leichleiter's Motion to Enforce Terms of Guilty Plea Ref: Sentencing Involving Firearm for "Sporting Purposes," Filing 294; Defendant's Objection/Motion to Strike From PSR Ref: USSG § 2K2.1(b)(6)(B), Filing 295; and Defendant's Objection/Motion to Strike From PSR and set Total Offense Level at "8," Filing 305. On August 23, 2021, the day before his trial, Defendant pleaded guilty to being a prohibited person in possession of firearms in violation of .  Defendant then proceeded to trial on the charge of kidnapping in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2 (aiding and abetting) on August 24, 2022. Filing 148. On August 31, 2021, the jury returned a verdict of not guilty as to Leichleiter but convicted his co-defendant of the kidnapping charge against her. Filing 171.

In preparation for what the Court believed would be a procedurally straight-forward sentencing on a plea of guilty to a prohibited person in possession of firearms charge, the Defendant stated (without requesting) that he was inclined to call 16 witnesses at his sentencing and offer some 28 exhibits. *See* Filing 306; Filing 307. Although the Court could have denied Defendant's proposed evidence for failure to follow this Court's local rules regarding evidence at sentencing, the Court instead gave Defendant leave to offer the evidence he wished to offer and explain the reasoning for the witness testimony he wished to offer in accordance with Nebraska

local rules. Defendant also previously made numerous objections to the Revised Presentence Investigation Report (RPSR). Given these filings, the Court has decided to issue these tentative findings in order for the sentencing in the matter to proceed as efficiently as possible. By the Court's Order Regarding Sentencing Schedule dated May 24, 2022, the Court set out a schedule for Defendant to comply with this Court's local rules, and also noted that the Court would likely issue these tentative findings. Filing 312.

## I. BACKGROUND

Given the considerable post-trial and post-guilty-plea activity in this case, the Court finds it appropriate to outline the considerable litigation since the kidnapping trial.

After Defendant pleaded guilty to being a prohibited person in possession of firearms on August 23, 2021, Filing 148, the Court ordered Defendant to remain detained pending sentencing, which was initially scheduled for December 8, 2021. Filing 167. On September 9, 2021, trial counsel filed a motion seeking Defendant's release. Filing 176. In it, counsel erroneously represented Defendant was subject to far lower sentencing guidelines than the RPSR now indicates he is subject to. *See* Filing 176. The magistrate judge denied Defendant's release on September 21, 2021. Filing 194.

On October 27, 2021, the Court ordered a psychological examination of Defendant. Filing 207. The Court ordered this examination on the recommendation of the probation officer because while he was incarcerated, Defendant had mentioned he was autistic. Defendant and his trial counsel also represented to the Court during his change of plea hearing that he had been admitted to a hospital for mental health reasons, and while Defendant attributed his admission to his being a "slight autistic," defense counsel represented that the circumstances of Defendant's admission were "somewhat obscure to him based upon what he was suffering at the time." Filing 291 at 4. In

light of the need to investigate Defendant's statements in this regard to ensure a just and proper sentence, the Court rescheduled sentencing for February 2, 2022. Filing 209. The evaluating psychologist provided the Court with his report on December 23, 2021. Filing 232. Despite Defendant's statements, the psychologist found no indication Defendant had been diagnosed as autistic. Filing 232.

On December 29, 2021, trial counsel filed a motion seeking to withdraw as counsel for Defendant, citing a non-waivable conflict-of-interest that had arisen. Filing 243. On January 6, 2022, the magistrate judge held a hearing on the matter and allowed trial counsel to withdraw; sentencing was continued indefinitely to allow the defendant to find new counsel. Filing 246. The magistrate judge held status conferences with the parties on January 21, 2022, and February 4, 2022. Filing 248; Filing 254. On February 18, 2022, the magistrate judge appointed counsel from the Criminal Justice Act (CJA) panel to represent Defendant. Filing 257. The magistrate judge set a status conference with Defendant and counsel for March 4, 2022; it was then continued to March 24, 2022, on Defendant's motion. Filing 277. Defendant then retained his current attorney, and current counsel entered his appearance on Defendant's behalf on March 23, 2022. Filing 285. Defendant's CJA counsel withdrew on March 24, 2022. Filing 286; Filing 289. The magistrate judge then continued the status conference until April 15, 2022, to give Defendant's new counsel time to prepare. Filing 288.

On April 5, 2022, defense counsel filed Defendant's Motion to Enforce Terms of Guilty Plea Ref: Sentencing Involving Firearm for "Sporting Purposes." Filing 294. Two days later, he filed the Objection/Motion to Strike From PSR Ref: USSG § 2K2.1(b)(6)(B). Filing 295. On April 14, 2022, the magistrate judge granted the parties' joint motion to continue their status conference

pending this Court's ruling on Defendant's motion regarding enforcement of his plea petition.[1] Filing 301. This Court then advised the parties by text order that it intended to rule on Defendant's motion at sentencing and set sentencing for June 1, 2022. Filing 302.

On April 29, 2022, Defendant filed his Objection/Motion to Strike From PSR and set Total Offense Level at "8". Filing 305. Contemporaneously, he filed a list of sixteen potential witnesses, Filing 306, and an index of twenty-eight potential pieces of evidence, Filing 307. He failed, however, to adequately describe the nature of his witnesses and the need to call them as required by NECrimR 32.1(b)(6)(C). *See* Filing 306. Similarly, while he identified exhibits he intended to submit for the Court's consideration at sentencing, he failed to submit copies of them with the motions and/or objections they were to support. *See* Filing 307. In its May 24, 2022 Order, the Court noted that any need for such voluminous evidence and witness testimony would be highly irregular at sentencing and expressed doubts as to whether sixteen live witnesses were necessary. Filing 312 at 2. Nevertheless, the Court continued sentencing until June 15, 2022, and gave the Defendant until June 1, 2022 to comply with the Court's local rules, provide any evidence desired, and explain the need for any live witnesses. Filing 312. The Defendant has now provided exhibits to the Court and proposes only two live witnesses, for limited duration, in the event that the government contests certain facts set forth in the witnesses' affidavits. *See* Filing 313; Filing 314.

The potential live witnesses identified are Defendant's parents, Andy and Donna Leichleiter. Filing 314. Mr. Leichleiter's affidavit details items he picked up from law enforcement in Kansas that had been seized when Defendant was arrested, and it includes pictures of Defendnat's vehicle and the items he recovered in May 2020. Def. Ex. 26. Ms. Leichleiter's

---

[1] As set forth more fully below, in Defendant's April 5, 2022 Motion to Enforce Terms of Guilty Plea Ref: Sentencing Involving Firearm for "Sporting Purposes," Filing 294, he asks the Court to enforce his Petition to Enter a Plea of Guilty, Filing 151; there is no plea agreement in this case.

affidavit provides pictures of Defendant's home, noting the "crucifixes and other inspirational messages" hung in the living area. Def. Ex. 27. She also explains that she went with her husband to Kansas to pick up items seized from Defendant and notes a red bag with children's clothes was included in those items; she was challenged on that point during the kidnapping trial. Def. Ex. 27 at 2. She also avers that the red bag and contents were returned to the victims' mother. Def. Ex. 27 at 2. The government has not indicated thus far that it intends to dispute any of the facts set forth in the affidavits.

In accordance with NECrimR 32.1(b)(7), this Court may, though it typically does not, issue tentative rulings ahead of sentencing hearings. The Court prefers to address all objections and relevant motions during the hearing. Given the significant number of exhibits intended to be offered by the Defendant in this case, however, the Court thought it best to provide the parties with tentative rulings ahead of the hearing. *See* Filing 312 at 3.

The Court has now reviewed all of Defendant's proposed exhibits[2] and the parties' filings. In the interest of conserving the Court's and the parties' time and resources, and in preventing

---

[2] As provided, Ex. 1 is Defendant's Petition to Enter a Plea of Guilty. Ex. 2 is the transcript of his change of plea hearing. Ex. 3 is not provided, and not intended to be provided. Ex. 4 is a collection of letters regarding Defendant's character and positive history with firearms used for sporting purposes. Ex. 5 is a collection of letters regarding Defendant's character and religious beliefs and values. Ex. 6 is a collection of letters of reference addressing Defendant's good character in general. Ex. 7 is a video, which is set to music, of portions of hunts that occurred at Pheasant Bonanza, where Defendant worked. Ex. 8 is a video of Defendant in a pistol shooting competition. Ex. 9 is another video of Defendant shooting a handgun at targets. Ex. 10 is another video of Defendant competing in pistol shooting. Ex. 11 is a video of Defendant shooting taken with a body or head-mounted camera to give the shooter's perspective. Ex. 12 is a promotional video explaining a shooting competition. Ex. 13 is a score sheet indicating Defendant participated in a shooting competition. Ex. 14 is a similarly indicative score sheet. Ex. 15 is a screen capture from a website describing one of the shooting competitions Defendant was involved in. Ex. 16 is a firearm trade publication describing 3-gun shooting. Ex. 17 is photos of some of the contents of the SUV used to take the victims to Kansas, including multiple airsoft and bb guns. Ex. 18 is a trial transcript with testimony about the gun found between the driver's seat and center console highlighted. Ex. 19 is body camera footage from an officer photographing and searching the vehicle; it reveals the handgun between the driver's seat and center console had an empty magazine in the weapon and a clear chamber, but it had a loaded magazine in the same holster. Ex. 20 is still photos of the same weapon. Ex. 21 is a video of the victims with police. Ex. 22 is stills similar to the video which Defendant contends reveal police did not place the victims in car seats. Ex. 23 is video of the victims in the back of a police vehicle not in car seats in which the children ask to go home, ask for their mother, and ask for food. Ex. 24 is screen shots from the same video. Ex. 25 Is body camera footage of Defendant's apprehension and arrest. In it, he notes that the children's

further delays in the resolution of this case, the Court will set forth tentative rulings on the pending motions and objections below. The Court will also address acceptance of responsibility. Before doing so, the Court will address the issue of exhibits and witnesses.

## II. EXHIBITS AND WITNESSES

Defendant's exhibit list is now thirty-one items long, though one item, exhibit 3, indicates it will not be used and is intentionally left blank. Filing 313. The Court has considered each exhibit Defendant has provided for the purposes of these tentative rulings and will consider them at sentencing absent objection from the government.

As noted, Defendant has now reduced his witness list of potential live witnesses from sixteen down to two people, expected to testify only for five minutes, and then only if needed in the event that the government refutes certain facts they assert by affidavit. Filing 314. Federal Rule of Criminal Procedure 32(i) governs sentencing. In relevant part, the rule provides that the Court "*may* permit the parties to introduce evidence on [their] objections." Fed. R. Crim. P. 32(i)(2) (emphasis added). *But see United States v. Morehead*, 375 F.3d 677, 679 (8th Cir. 2004) ("When a defendant disputes material facts in his PSR, the sentencing court must either refuse to take those facts into account or hold an evidentiary hearing." (citing *United States v. Delpit*, 94 F.3d 1134, 1154 (8th Cir. 1996)). However, the "procedure to be followed [for a sentencing hearing] rests in

---

grandmother told him to take them, that the children are his responsibility, that he has claimed them on his taxes for the last five years, and that his daughter (presumably the children's mother) "ran off with them." Ex. 26 is an affidavit from Andy Leichleiter, Defendant's father, indicating he and his wife picked up Defendant's SUV from law enforcement in Kansas; pictures of the vehicle represented to have been taken in Andy Leichleiter's presence by the Federal Public Defender's Office are attached to the affidavit. Ex. 27 is an affidavit from Defendant's mother, with photos of where Defendant lived in the Tekamah Motel attached, which indicates it was "a very religious household, at least as far as [Defendant] and [Co-defendant] were concerned." Ex. 28 is a picture of a letter from the Sedgwick County (KS) Sheriff's Office indicating that a red bag with children's clothing and other items are available to be released to Defendant. Ex. 29 is letter from defense counsel to the prosecutor in this case referencing Defendant's mother's testimony at trial and the red bag of children's clothes that was available for pickup. Ex. 30 is a letter from Defendant to probation. It details a long positive history with firearms and asserts that all firearms in the vehicle were unloaded. Ex. 31 is a drug information sheet concerning Defendant's prescription for aripiprazole. It indicates the drug is used to treat "schizophrenia, bipolar disorder, depression, and Tourette syndrome," and it "[a]los treats irritability associated with autism."

the sound discretion of the district court." *United States v. Wise*, 976 F.2d 393, 404 (8th Cir. 1992). "A sentencing court has a wide discretion and may consider any relevant information that may assist the court in determining a fair and just sentence." *United States v. Gant*, 663 F.3d 1023, 1029 (8th Cir. 2011) (citing *United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009)); *United States v. Andrews*, 861 Fed. App'x 113, 115 (8th Cir. 2021) (quoting *United States v. Urbina-Mejia*, 450 F.3d 838, 840 (8th Cir. 2006)) ("In making its factual findings, the 'court may consider any evidence in its sentencing determination that has sufficient indicia of reliability to support its probable accuracy.'"). "[I]n sentencing, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come . . . ." *Id.* (quoting *United States v. Ortiz*, 636 F.3d 389, 393 (8th Cir. 2011)) (alteration original) (internal quotation marks omitted). It is also well established that "the confrontation clause does not apply in sentencing proceedings." *United States v. Coonce*, 932 F.3d 623, 640 (8th Cir. 2019) (quoting *United States v. Wallace*, 408 F.3d 1046, 1048 (8th Cir. 2005)).

Many of the facts disputed by Defendant were the subject of much testimony at his kidnapping trial. Indeed, Defendant relies in part on trial testimony to support his motions and objections. *See, e.g.*, Filing 313 (identifying Def. Ex. 18 as "Trial transcript ref: loaded, unloaded firearms – highlighted"). The Court finds that the testimony given under oath at Defendant's kidnapping trial bears sufficient indicia of reliability, such that it should be relied upon at sentencing. Many of the disputes at issue can be decided on the basis of evidence at trial, and it is well established that the Court may use trial evidence and testimony to settle disputes at sentencing. *See United States v. Maxwell*, 778 F.3d 719, 737 (8th Cir. 2015) (quoting *United States v. Theimer*, 557 F.3d 576, 578 (8th Cir. 2009)) ("[T]he district court permissibly 'made its findings with respect to the disputed [facts] based on the evidence at trial, not on the PSR.'"); *Andrews*, 861 Fed. App'x

at 115 (quoting *Urbina-Mejia*, 450 F.3d at 840) ("In making its factual findings, the 'court may consider any evidence in its sentencing determination that has sufficient indicia of reliability to support its probable accuracy.'"). Thus, the Court will decide some of the parties' disputes based in part on evidence offered at the kidnapping trial. However, if needed to resolve a relevant factual dispute between the parties, the Court will allow Defendant's two proposed live witnesses at sentencing for the limited purpose he indicates in Filing 314. Having reviewed the affidavits in question, however, the Court doubts the need to resolve any factual dispute with regard to them will arise.

### III. DEFENDANT'S "MOTION TO ENFORCE TERMS OF GUILTY PLEA"

In early April, Defendant filed his Motion to Enforce Terms of Guilty Plea. Filing 294. In it, Defendant asks the Court to "enforce" the terms of his petition, and he asserts that his base offense level should be a "6," because he included in his Petition to Enter a Plea of Guilty, Filing 151 at 7, that he "possessed a firearm for sporting purposes while being an unlawful user of marijuana." Filing 294 at 1. The government opposes Defendant's motion, argues he offers no reason a plea petition should be enforced, and notes that there is no plea agreement in this case. Filing 296. The Court intends to deny the Defendant's motion.

The Defendant has provided no support for the notion that a defendant's petition, rather than a plea agreement, is something to be "enforced." *See* Filing 294; Filing 298. The Court is aware of no precedent indicating that a Defendant's version of the facts is binding on the Court when he pleads guilty, and the defense has not provided any.[3] The Court declines to adopt

---

[3] In the instant motion, Defendant inexplicably cites the following: U.S.S.G. 2K2.1(b)(2) commentary, n.6 (noting "where the base offense level is determined under subsections (a)(1)-(a)(5), subsection (b)(2) is not applicable"); *United States v. Sholley-Gonzalez*, 996 F.3d 887 (8th Cir. 2021) (remanding for the district court's improper consideration of attempted purchases of firearms in the denial of a sporting use reduction at sentencing); *United States v Massey*, 462 F.3d 843 (8th Cir. 2006) (affirming a district court for properly applying 2K2.1(b)(2)); Fed. R. Crim.

Defendant's version of facts solely because the government did not expressly dispute them at his plea hearing or in its factual basis. The Court will determine Defendant's guidelines on the basis of the evidence available to it at sentencing.

Further, even if the Court were to accept that Defendant possessed the firearms[4] at issue for sporting purposes, it would not matter in this case. The phrase "sporting purposes" appears twice in the United States Sentencing Commission Guideline Manual 2021: at § 2K2.1(b)(2) and in the commentary to that subsection at note 6. § 2K2.1(b)(2) provides, "If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes . . . decrease the offense level determined above to level 6." The commentary similarly stresses "that where the base offense level is determined under subsections (a)(1)–(a)(5), subsection (b)(2) is not applicable." U.S.S.G. § 2K2.1(b)(2), cmt. n.6. § 2K2.1(a)(4)(B) provides a base offense level of 20 if "the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense." Defendant indisputably possessed a firearm capable of accepting a large capacity magazine[5] and has pleaded guilty to being a prohibited person at the time he did so. Therefore, § 2K2.1(a)(4) is properly used to determine his base offense level, and § 2K2.1(b)(2) is inapplicable. Thus, the Court intends to deny Defendant's Motion to Enforce Terms of Guilty Plea, Filing 294.

---

P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."); and *United States v. Heid*, 651 F.3d 850, 854 (8th Cir.2011) (explaining the purpose of Fed. R. Crim. P. 11(b)(3) is to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge"). None of these authorities say anything about the propriety of enforcing a plea petition. The commentary to the sentencing guidelines that Defendant cites, as discussed more fully below, actually makes clear that 2K2.1(b)(2) is inapplicable in this case.

[4] Defendant was indicted for, and pleaded guilty to, possessing ten firearms. Filing 27-1; Filing 291 at 14-15.

[5] One of the firearms Defendant pleaded guilty to possessing was an AR-15, Filing 27-1, which can accept a magazine containing greater than fifteen rounds of ammunition, *see* U.S.S.G. § 2K2.1, cmt. n.2 (defining large capacity as "a magazine or similar device that could accept more than 15 rounds of ammunition"). The parties have not objected to or otherwise disputed this point.

## IV. DEFENDANT'S OBJECTION/MOTION TO STRIKE FROM PSR REF: U.S.S.G. § 2K2.1(b)(6)(B)

Next, Defendant has filed a separate Objection/Motion to Strike From PSR Ref: USSG §2K2.1(b)(6)(B). Filing 295. The document notes objections to paragraphs 17, 18, 19, 20, 22 (sub. 3), 27, 34, and 43 of the RPSR. No brief accompanies the objections, and Defendant's filing only explains why, in Defendant's view, the sentencing enhancement for possessing the firearms at issue in connection with another felony under U.S.S.G. § 2K2.1(b)(6)(B), ought not to apply; it does not address the specific facts at issue in each paragraph. *See* Filing 295. The government opposes the objections and contends there was sufficient evidence presented during the kidnapping trial to allow the Court to rule against the Defendant. *See* Filing 311 at 5-7. The Court agrees with the government.

### A. Paragraphs 17, 18, 19, and 20

The Court notes first that paragraphs 17, 18, 19, and 20 are merely the government's position regarding the facts in this case. The Court will not consider the government's version of the facts in the RPSR as evidence itself. Rather, the Court finds that the government proved all of the facts it asserts as true in paragraphs 17, 18, 19, and 20 at the kidnapping trial by "the greater than the preponderance of the evidence" standard that applies at sentencing, and the Court will consider those facts on that basis.[6] Thus, the Court will overrule the objections to these paragraphs.

---

[6] Paragraph 17 asserts Defendant misrepresented his mental health issues as autism to the Court at his change of plea hearing. That is true. *See* Filing 291 at 4 (Defendant attributing his admission to inpatient mental health treatment as being due to his "slight" autism and defense counsel correcting him, stating the circumstance of Defendant's admission were "somewhat obscure to him based upon what he was suffering at the time"). Paragraph 18 explains the victims' grandmother was convicted of kidnapping them for the incident in which Defendant took them to Kansas, that the victims' mother testified Defendant wanted to train the children to shoot as part of a plan to deal with the COVID-19 pandemic, which he viewed as a government conspiracy, and that witnesses testified Defendant was acting unstable when the incident occurred. All of that happened. *See, e.g.*, Filing 171 (verdict form); Filing 217 at 82, 221 (mother testifying about Defendant's plans for her children). Paragraph 19 asserts the government's contention that Defendant took the children without shoes or car seats to Kansas, and then accurately details the oldest child's testimony. *See*

**B. Paragraphs 22 (sub. 3), 27, 34, and 43**

*1. Factual Matters*

Paragraph 27 contains asserted facts. The Court finds these facts were established at trial, with the exception of the house the boys were taken to being a "drug house." Specifically, the oldest victim and his mother both testified the boys were taken by Defendant around 9:00 p.m., while their mother and grandmother were talking in another room. *See* Filing 218 at 20-51 (child-victim testifying to the circumstances under which he and his brother were taken); *see also* Filing 217 at 48 (the victims' mother testifying she didn't have a clock but estimates she stopped hearing them by 10:30 or 11:00 p.m. the night they were taken). The Court will not consider in sentencing Defendant whether the house to which the victims were taken was one at which Defendant had purchased marijuana in the past absent more evidence to that effect. Similarly, the Court need not consider the precise time Defendant took the boys, though it has been shown by a preponderance of the evidence it was after 9:00 p.m. Paragraph 34 also contains information that the house Defendant and the victims stopped at was a "drug house." The Court will not consider it in sentencing, unless and until proven by the government. The other factual matters in paragraph 34 are established by the evidence offered at trial and will be considered. *See* Filing 216 at 74 (Deputy Blackwood testifying to gun found between driver's seat and center console), 119 (Deputy Lord testifying marijuana was found in the vehicle), 143 (Deputy Lord testifying he saw no car seats in the vehicle despite searching it); Filing 305 at 7 ("[Defendant] ADMITS that there were no car

---

Filing 218 at 20-51 (child-victim testimony). Paragraph 20 indicates the eldest victim heard the co-defendant shouting at his mother before Defendant took him and his brother, and the co-defendant told law enforcement she and Defendant had a plan, and he had taken the children as a favor to her. This too accurately reflects the evidence at trial. *See* Filing 218 at 20-51 (child-victim testimony); Plaintiff's Ex. 21 from trial (clips of co-defendant's interview with law enforcement).

seats in the vehicle but alleges that there were operational seat belts in the back seat."), 11 ("Mr. Leichleiter further admits that the two children did not have shoes during the trip . . . .").

*2. Matters of Guideline Application*

Paragraphs 22 (sub 3), 34, and 43 all concern application of U.S.S.G. § 2K2.1(b)(6)(B), a four-level enhancement that applies when the firearms at issue were used in connection with another felony offense. In Nebraska, child abuse is a felony. Neb. Rev. Stat. § 28-707(4) ("Child abuse is a Class IIIA felony if the offense is committed knowingly and intentionally and does not result in serious bodily injury as defined in section 28-109 or death.").

> A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:
>
> (a) Placed in a situation that endangers his or her life or physical or mental health;
>
> (b) Cruelly confined or cruelly punished;
>
> (c) Deprived of necessary food, clothing, shelter, or care . . . .

Neb. Rev. Stat. § 28-704. Defendant contends that the enhancement should not apply because there is "no evidence of the circumstances of the two children footwear and seating circumstances when they were within the State of Nebraska's criminal jurisdiction," and in Kansas, where the boys were finally recovered, Defendant's actions with respect to them would constitute only a misdemeanor, at worst. Filing 295 at 1. *But see* Filing 305 at 7 ("[Defendant] ADMITS that there were no car seats in the vehicle but alleges that there were operational seat belts in the back seat."). The Court disagrees with the Defendant as to the evidence of what occurred in Nebraska.

The fact that the victims were recovered in Kansas, without car seats or shoes, in a car with numerous firearms and significant quantities of a controlled substance within reach of the children is evidence that the child-victims, who were four and seven years old, were similarly endangered while on their way to Kansas from Nebraska. There is no evidence that Defendant had car seats

for the children and removed and discarded them after entering Kansas. It is simply not credible that Defendant used car seats while in Nebraska, but then ceased doing so at or beyond the Kansas border. Defendant apparently abandoned this argument in his later filings. *See* Filing 305 at 7 (admitting there were no car seats). Further, even if there had been car seats, it would not alter the fact that multiple firearms, ammunition, and a significant quantity of an illicit substance were within the reach of very young children throughout the journey. We know that because those items were in the car the children and the Defendant were in when Defendant was arrested. *See* Filing 216 at 100 (Deputy Lord testifying there were "roughly eight" firearms in the vehicle), 119 (Deputy Lord testifying marijuana was found in the vehicle), 127 (Deputy Lord testifying there was a handgun between the driver's seat and center console), 184 (Deputy Lord noting there were two magazines associated with the handgun next to the driver's seat: one in the weapon and one in the holster pouch). Based on the evidence presented at trial, the Court has little trouble concluding Defendant knowingly and intentionally endangered the kidnapping victims' lives and physical and mental health while depriving them of necessary care. Thus, the firearms at issue were possessed in connection with another felony, and the enhancement applies. The Court will overrule these objections as well.

## V. DEFENDANT'S OBJECTION/MOTION TO STRIKE FROM PSR AND SET TOTAL OFFENSE LEVEL AT "8"

Defendant also filed a number of other objections to the RPSR, and what seem to be a number of comments on the RPSR that are not objections. *See, e.g.*, Filing 305 at 17 (explaining assertions concerning paragraphs 77 thru 92, but noting "NO OBJECTIONS"). Defendant's filing also argues in favor of a downward departure. Filing 305 at 17-19. The government forgoes argument on the majority of Defendant's objections, noting that many pertain to factual matters

the Court does not need to rule on to facilitate sentencing. Filing 311 at 4. The government instead focuses on arguing against an offense level reduction for firearms used for sporting purposes and in favor of the enhancement for using the firearms in connection with another felony, as just discussed in section IV. *See generally* Filing 311. The Court will not address every comment made by Defendant, but aside from those objections already discussed in detail above (paragraphs 17, 18, 19, 20, 22 (sub. 3), 27, 34, and 43), the Court will note and address each objection below.

### A. Paragraphs 12 and 121

Paragraph 12 states in its entirety: "There is no plea agreement in this case." Paragraph 12 is accurate. Paragraph 121 states the same. Defendant nevertheless comments as to what the government's factual basis did or did not contradict. There is nothing for the Court to rule on. To the extent there is an objection, it is overruled.

### B. Paragraph 22 (sub 4)

Paragraph 22 (sub 3) has already been addressed; Defendant also objects to subparagraph 4 as inapplicable, but does not say why it is inapplicable. Filing 305 at 2. Subparagraph 4 sets forth the government's assertion that Defendant should not receive an offense level reduction for acceptance of responsibility, and cites *United States v. Vang*, 3 F.4th 1064, 1068 (8th Cir. 2021) (en banc), which upheld the district court's denial of an acceptance of responsibility reduction where defendant pleaded guilty only three day before trial. This is the government's position, not a fact. The RPSR currently credits defendant with a two-level reduction for acceptance of responsibility. The government is not required to move for an additional downward adjustment, but it may. *See* U.S.S.G. § 3E1.1(b) ("If the defendant qualifies for a decrease under subsection (a) . . . upon motion of the government stating that the defendant has . . . by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid

preparing for trial . . . ."). Defendant pleaded guilty only the day before trial began. The government clearly had to prepare for the trial on the current offense, and it is under no obligation to seek an offense level reduction. Further, the Court notes "[a] defendant who enters a guilty plea is not entitled to an adjustment under [§ 3E1.1] as a matter of right." U.S.S.G. § 3E1.1, cmt. n.3. The Court intends to overrule the objection to paragraph 22 (sub. 4). The Court further addresses acceptance of responsibility on its own motion in section VI below.

### C. Paragraph 26

Defendant objects to the first three sentences of paragraph 26 "because [he] was NOT present for the events described." Filing 305 at 2 (capitalization original). Paragraph 26 details the victims' and their mother's arrival at the residence (hotel) in Tekamah, Nebraska. It is factually accurate as indicated by credible testimony heard at trial. *See* Filing 217 at 42-53 (victim's mother describing the events at the hotel the night the victims were taken); Filing 218 at 20-51 (child-victim testifying to the circumstances under which he and his brother were taken). Whether the Defendant was there or not is irrelevant, is not indicated in paragraph 26, and does not indicate to the Court whether the facts therein are more or less likely to be true. The Court will overrule this objection.

### D. Paragraph 28

Defendant objects to the first sentence of paragraph 28, stating he did not have a phone with him when he was supposed to have received a call letting him know his co-defendant had been arrested. Filing 305 at 3. The evidence at trial was that the Defendant had indeed left his phone behind when he departed for Kansas with the victims. However, one of the victims testified, and it was unrefuted, that Defendant received a call while at the house in Harvard, Nebraska. *See* Filing 218 at 22-23. Paragraph 28 states Defendant "and the boys were at the house in Harvard,

15

Nebraska, someone called the defendant and told him that the co-defendant got arrested." Per the unrefuted testimony at trial, that is accurate, and the witness, the eldest victim, was extremely credible. Filing 218 at 22-23 (victim testifying someone woke Defendant in the house where they stayed in Harvard, NE, Defendant was told by phone that his co-defendant had been arrested, and he then told the victims to get in the car). It is not alleged that Defendant received the call on his cell phone and that was not the testimony at trial. The Court intends to overrule this objection.

### E. Paragraph 30

Defendant objects to paragraph 30, disputing the claim that firearms were within reach of the children. Filing 305 at 4. This is contrary to the evidence at trial, however, which indicated firearms were within the children's reach. *See, e.g.*, Filing 216 at 127 (Deputy Lord testifying there was a handgun between the driver's seat and center console). Further, in his objection, Defendant admits a gun was "tucked" between the passenger seat and center console. Filing 305 at 4. Given the sport utility vehicle Defendant and the victims were in, the Court has little trouble concluding this weapon, and others, were within reach of the children. An unrestrained four or seven-year-old child could easily reach between the center console and front seats and elsewhere in the vehicle to access firearms. The Court intends to overrule this objection.

### F. Paragraph 31

Defendant denies that he had a loaded handgun in the front seat with him. Filing 305 at 5-6. The Court agrees with Defendant that the evidence at trial was inconclusive on this point, and the body camera footage submitted by Defendant, along with partially conflicting trial testimony give the Court some doubt as to whether a magazine containing live rounds was actually seated in the weapon between Defendant's seat and the center console. *See* Def. Ex. 19 (Deputy Ruiz's body camera footage from the vehicle search). The Court will not consider any firearms Defendant had

16

in the front seat as loaded for the purposes of sentencing, so it will not rule on this objection. The Court does note, however, that trial testimony and the videos submitted by Defendant indicate that a loaded magazine was in the same holster as the weapon, and the Defendant is well practiced at quickly reloading pistols. *See* Filing 216 at 184 (deputy testifying there were two magazines, one in weapon and one in holster pouch); Def. Ex. 8, 9, 10, 11, 19 (videos of Defendant conducting rapid reloads and other competition shooting). The Court will consider those facts as established absent convincing evidence to the contrary.

### G. Paragraph 32

Defendant objects to the application of U.S.S.G. § 2K1.1(a)(4), which provides a base offense level of 20 where a firearm used in the offense is a semiautomatic "that is capable of accepting a large capacity magazine." Filing 305 at 6. Defendant asserts § 2K1.1(a)(4) does not apply when a rifle is possessed for sporting purposes but provides no support for this contention. Filing 305 at 6. § 2K1.1(a)(4) does not mention sporting purposes. The only mention of "sporting purposes" in the relevant guideline section comes later, in § 2K1.1(b)(2) and the associated commentary. § 2K2.1(b)(2) states, "If the defendant, *other than a defendant subject to subsection* (a)(1), (a)(2), (a)(3), *(a)(4)*, or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes . . . decrease the offense level determined above to level 6." U.S.S.G. § 2K1.1(b)(2) (emphasis added). Defendant is subject to "subsection . . . (a)(4)," even if his firearms were possessed for sporting purposes. Therefore, any reduction or lack of enhancement for sporting purposes does not apply in this case.

Further, the Court finds the evidence at trial more than shows the firearms were not possessed "*solely* for lawful sporting purposes." *See* U.S.S.G. § 2K1.1(b)(2) (emphasis added). The Court quite clearly remembers testimony from the victims' mother indicating that Defendant

intended to train her boys to be part of his "army" during the COVID-19 pandemic, which he viewed as a government conspiracy. Filing 217 at 82, 221. The Court found this testimony credible and determines the firearms were in Defendant's possession for reasons other than a sporting purpose. Additionally, one simply does not store a handgun in a holster with ammunition at the ready between the driver's seat and center console for sporting purposes. Clearly, Defendant possessed that weapon for some other purpose. *See United States v. Ramirez-Rios*, 270 F.3d 1185, 1187 (8th Cir. 2001) ("A defendant who possesses a handgun for personal protection is not entitled to a § 2K2.1(b)(2) reduction."). Defendant's objection to paragraph 32 will be overruled.

### H. Paragraph 34

The Court has already provided its tentative ruling as to paragraph 34. It takes this opportunity merely to note that it fails to see the relevance of whether Kansas law enforcement officers placed the child-victims in car seats, which is much of the substance of Defendant's argument. *See* Filing 305 at 7-11 (asserting the children were not in proper seating restraints when transported by law enforcement). Kansas law enforcement is not being sentenced.

### I. Paragraphs 41, 47, and 50

Defendant objects to paragraphs 41, 47, and 50, asserting various offense levels are incorrect given his objections. Given the Court's intended rulings on the relevant objections, the calculations are correct, and the Court intends to overrule the objections to paragraphs 41, 47, and 50.

### J. Paragraph 71

It is unclear if Defendant is actually objecting to paragraph 71, which concerns statements he made about himself being autistic. Filing 305 at 16. The Court will not consider statements

made by the Defendant to this effect in sentencing him, so even if there is an objection, no ruling is required.

### K. Paragraphs 120 and 125

Defendant objects to paragraphs 120 and 125, noting Defendant's guidelines would be different if his objections were sustained. Filing 305 at 17. The Court intends to overrule the other relevant objections that would impact the guideline calculations and therefore intends to overrule the objections to paragraphs 120 and 125 as well.

### L. Paragraphs 133, 134, and 135

Defendant objects to the probation officer's determination that there are no factors that would warrant a variance or departure. Filing 305 at 17-19. Defendant asserts there "are several reasons why a downward departure is justified in this case," but lists only the COVID-19 pandemic and its "personal impact" on Defendant, and legislative movement toward the decriminalization of marijuana. Filing 305 at 18-19. The Court does not find either reason compelling. The "personal impact" of COVID-19 in no way excuses or mitigates Defendant's conduct. Similarly, what Defendant did was and continues to be illegal. His conduct warrants a significant sentence in light of the factors set out in 18 U.S.C. § 3553(a) that this Court must consider. The Court is not inclined to depart or vary downward, and the objections will be overruled.

### VI. ACCEPTANCE OF RESPONSIBILITY

The RPSR currently gives the Defendant credit for accepting responsibility for his actions and applies an associated two-offense-level reduction pursuant to U.S.S.G. § 3E1.1. However, the Court has reviewed the record and determines that the Defendant's guilty plea alone does not warrant a reduction for acceptance of responsibility. Thus, the Court does not intend to apply the two-level reduction under U.S.S.G. § 3E1.1.

Although a guilty plea is "significant evidence of acceptance of responsibility," such "evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.3. "[A] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *United States v. Cooper*, 998 F.3d 806, 810 (8th Cir. 2021) (quoting *United States v. William*, 681 F.3d 936, 939 (8th Cir. 2012) and U.S.S.G. § 3E1.1, cmt. n.3). "The key issue is whether the defendant has shown 'a recognition and affirmative responsibility for the offense and sincere remorse.'" *Id.* (quoting *United States v. Nguyen*, 52 F.3d 192, 194 (8th Cir. 1995) (quoting *United States v. Knight*, 905 F.2d 189, 192 (8th Cir. 1990))). The Eighth Circuit Court of Appeals "has consistently denied the acceptance-of-responsibility reduction to defendants whose conduct belies their claims of contrition." *Id.* (quoting *Nguyen*, 52 F.3d at 194). Among the factors the Court considers in determining whether a defendant has accepted responsibility such that the offense-level reduction under § 3E1.1 applies, the following are relevant here: whether the defendant falsely denies or frivolously contests relevant conduct, whether the defendant voluntarily withdraws from criminal conduct, any "voluntary surrender to authorities promptly after commission of the offense," and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." U.S.S.G. § 3E1.1, cmt. n.1(A), (B), (D), and (H).

Defendant has contested whether there was evidence the children in the vehicle with him when he was arrested had car seats and shoes. *See, e.g.*, Filing 295 at 1. To his credit, he seems to later abandon this frivolous argument, but nevertheless replaces it with the argument that the Kansas authorities also did not use car seats with the children, saying nothing about whether the Kansas authorities had numerous weapons within reach of the children or significant quantities of controlled substances in their vehicles. *See* Filing 305 at 7.

The testimony at trial was that Defendant received a call indicating his wife had been arrested and authorities were searching for him and the children. Filing 218 at 22-23 (victim testifying someone woke Defendant in the house where they stayed in Harvard, NE, Defendant was told by phone that his co-defendant had been arrested, and he then told the victims to get in the car). Rather than turn himself in, return the boys to their home, or at least take the firearms and drugs out of the car in which he was transporting the victims, Defendant fled for Kansas, where he was finally arrested. Evidence submitted by the defense ahead of sentencing, body camera footage from an arresting officer, indicates that Defendant only stopped his vehicle when police had blocked the road ahead and had attempted to employ a tracking device on his vehicle. *See* Def. Ex. 25 (Deputy Ruiz's body camera footage from arrest). When he was arrested, Defendant did not caution the officers to be careful for the sake of the children; instead, he angrily demanded to know why he was being detained, informed officers they had no right to touch his property, asserted the children were his responsibility, and faulted their mother for "running off" with her own children. Def. Ex. 25. In fact, he had instructed the children to duck down so officers could not see them. Filing 218 at 24.

When Defendant did plead guilty, he did so only the day before trial. *See Vang*, 3 F.4th at 1068 (upholding denial of acceptance of responsibility where guilty plea was submitted three days before trial). In all likelihood, this was an attempt to keep further evidence of guns and drugs out of evidence in his kidnapping trial. Defendant has demonstrated no remorse. In his nine-page statement to the probation officer in this case, which the defense provided to the Court ahead of sentencing, *see* Def. Ex. 30, Defendant spends approximately six pages discussing his history with and knowledge of firearms. Def. Ex. 30 at 1-6. He also stresses that he had good reason for having the guns in the vehicle and stresses that he "made absolutely certain that every single firearm was

'unloaded' . . . ." Def Ex. 30 at 8. He then asserts that the gun between his seat and the center console could not be used as a weapon any more than "a wrench of same size could be," apparently denying or disregarding that the firearm was in a holster with a loaded magazine in close proximity. Def. Ex. 30 at 9. In fact, the numerous videos Defendant provided the Court indicate he is well trained to rapidly reload an empty firearm, which is an essential skill in the many shooting competitions he engages in. He then asserts "apparent hostility" towards his Christian beliefs (presumably referencing the portion of the RPSR in which the officer cites a psychological evaluation of Defendant in which the evaluator concluded Defendant appeared to engage in "hyper religious and magical thinking"). Def. Ex. 30 at 9; RPSR ¶ 78. He concludes his letter by informing the probation officer that his "experience with the federal criminal justice system has been real educational." Def. Ex. 30 at 9.

At no point in his nine pages, however, does he express anything bordering on remorse or even concern for his grandchildren. He dedicates well over six pages to explaining all of his positive experience with firearms, to say nothing of the fact that he was admittedly a prohibited person when he possessed the firearms in this case. Then, he makes excuses for why the guns he was forbidden from possessing were not actually a danger to anyone.

On the point of Defendant's history with firearms, Defendant has now submitted numerous videos of him using firearms in competition and submitted multiple letters detailing his work with firearms. *See* Def. Ex. 4; Ex. 8; Ex. 9; Ex. 10; Ex. 11. The evidence at trial indicates, however, that Defendant was a habitual marijuana user. *See* Filing 217 at 66-69 (victim's mother testifying to Defendant's drug use in the "early months of 2020"). Unobjected to portions of the RPSR indicate Defendant has long been a user of marijuana. *See* RPSR at ¶¶ 78, 80 (noting evaluator's assessment from an August 2016 mental health evaluation that Defendant used marijuana to self-medicate,

and that Defendant did not think it was wrong). Defendant is effectively flaunting his use of firearms to the Court despite credible evidence demonstrating he was likely an unlawful user of a controlled substance on those occasions as well. Thus, the Court has serious doubts about his understanding that what he has done is wrong and finds he has demonstrated a remarkable lack of remorse. He has proven that he has not accepted responsibility; he merely seeks a lower sentence. Accordingly, the Court will not grant a reduction on the basis of acceptance of responsibility pursuant to § 3E1.1 of the guidelines.

### VII. CONCLUSION

The parties will be free to make further argument at Defendant's sentencing hearing; however, the Court will not tolerate frivolous arguments or dilatory tactics. The parties are encouraged to keep any evidence offered to relevant issues that may impact the sentence in this case. In the event the Court has overlooked an objection that was properly filed, the parties should bring it to the Court's attention at the hearing.

Dated this 9th day of June, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge